286 So.2d 52

**Harry WHIPPLE**

**v.**

**STATE.**

**8 Div. 264.**

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

Rehearing Denied Sept. 25, 1973.

Malone, Steele & Alexander, Athens, for appellant.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of the offense of obtaining money by false pretenses and his sentence was fixed at seven (7) years imprisonment in the penitentiary.

The victim of this offense was an eighty-four year old woman living alone in the Mooresville community of Limestone County, Alabama. She lived in a small house that was built new after her son died about eight years prior to the date of the offense which occurred on August 13, 1970. Prior to this date the victim, Mrs. Anne Peebles, drew checks on the Peebles Farm Account without co-signatory. After this date, two signatures were required to draw checks on this account—Mrs. Peebles and her step-daughter, Mrs. Cathleen Peebles Allen. Apparently, Mrs. Peebles was in good health physically but she had arteriosclerosis or hardening of the arteries which is a common disease of most individuals of advancing age which impairs mind and memory, and destroys the power of resistance.

Around eight o'clock on the morning of August 13, 1970, Mrs. Peebles went to the local post office to get her mail and upon returning home, she found a pickup truck at her home and two men, one of whom was on the roof of the house. She asked why the man was on the roof and was told they were there to repair it. She told them the roof did not need repairing and the other man ordered her into her house.

He followed her in the house and told her to sit down "there and don't open your mouth." The men stayed there two to three hours and then told her to write out a check for $2,500.00 and to write on the check "repair on Peebles home." Mrs. Peebles became remonstrative and protested at considerable length saying her roof did not need any work on it, that it was in perfect condition and that she just recently had it gone over; that the man told her to write the check and she told him she could not write a check for him as she did not know his name. The man told her his name was Harry Whipple and to make the check out to him for $2,500.00 for the work they had done on the house. She said they hadn't done any work on the house, that they had taken off a few shingles and things just playing like they were working on the house.

From the record:

"Q. This handwriting here your handwriting? Says 'Repair on Anne Peebles home.' Is that your handwriting? See right here.

"A. Yes.

"Q. Says 'Repair on Anne Peebles home.'

"A. Yes.

"Q. And is this what the man told you to write down, or did you write down—or—

"A. He told me, he said, 'And put it down there, the repair work that I have done on this house.' I said, 'You haven't done any.' He said, 'You shut your mouth and do what I tell you.'

"Q. Yes, ma'am. He did tell you he had done repair work on your home, just what you—

"A. Yes.

"MR. STEELE: We object to leading the witness, may it please the Court.

About four or five times asked the same question.

"THE COURT: All right. Leading questions, as I understand the law, are in the discretion of the Court, depending on the circumstances as concerns individual witnesses and individual cases, and in this particular case it is the opinion of this Court that leading questions would be proper, and I will allow it and give you an exception.

"MR. STEELE: We except.

"MR. NELSON: Your Honor, we offer into evidence State's Exhibit 1, this check.

"MR. STEELE: We have no objection if it is stipulated that the check here has some stamp and red ink on it that was not on it at the time the witness testified —

"MR. NELSON: We will stipulate—if I understand it, talking about the paid stamp? It would be my understanding —

"THE COURT: Talking about the bank markings?

"MR. NELSON: Yes, sir.

"MR. STEELE: With that stipulation we have no objection.

" WHEREUPON, SAID CHECK BEING PREVIOUSLY MARKED AS STATE'S EXHIBIT 1 WAS RECEIVED IN EVIDENCE AND IS SET FORTH IN WORDS AND FIGURES AS FOLLOWS:

" (PICTURE)
(OF        )   1  FIRST NATIONAL          61-92
(BANK    )        BANK Of Decatur          621
                  DECATUR, ALABAMA      No.

                                  Aug. 13th-  19  70

                  (PAID Aug. 14, 1971)
                  (                                  )
PAY TO THE        (                                  )
   ORDER OF       (Harry Whipple            )   $ 2,500.00
                  (                                  )
Two thousand five hundred and no/100---DOLLARS
                  (                                  )
FOR Repair on (Anne Peebles Home  )
                  (                                  )
(TELLER)          (FIRST NATIONAL       )
(NO. 4 )          (BANK OF DECATUR,  )   PEEBLES FARM
(        )          (DECATUR, ALABAMA  )
                  (                                  )
                          By Anne R. Peebles

"(THE FOLLOWING IS THE REVERSE SIDE OF STATE'S EXHIBIT NUMBER 1.)

Mrs. Peebles further testified that she had never had an oral or written contract or agreement with appellant to do any work whatsoever on her house but he told her they had done repair work on the house in the amount of $2,500.00, and she wrote him a check for this amount.

On cross-examination, Mrs. Peebles testified that she knew they hadn't done $2,500.00 worth of work on her house or property; appellant spelled his name for her and she wrote out the check like he told her to do and handed it to him; *that he threatened to kill her if she didn't do it,* saying, "I want you to do it quick." She wrote the check out and handed it to appellant who left immediately. She called the cashier of her bank and told him to expect a check for $2,500.00 and asked him to cash it.

The state produced a witness in the building and supply business who had wide experience in all types of construction work and in estimating the cost of re-roofing and repairing gutters and downspouts. On August 31, 1970, this witness made a personal inspection of the Peebles home and estimated the cost of tearing the shingles off the roof and replacing them with new shingles would be $468.00, and to put a new roof on without removing the old shingles would be $353.31. He observed some work had been done on the roof just recently and that he could have done the same work for $78.40 and still made a profit. He further testified that this roof was a good roof and a new roof was not needed.

The Grand Jury returned a four-count indictment—two (2) counts for larceny and two (2) counts for false pretense—charging appellant and three others with these offenses. Appellant sought and obtained a severance. At the conclusion of the state's case, appellant made a motion to exclude the evidence as to each of the four counts, separately and severally. The court granted the motion as to the larceny counts and overruled as to the false pretense counts.

Appellant strongly urges that under the facts of this case, he could not, as a matter of law, be guilty of false pretenses. This issue is squarely presented by his motion to exclude the state's evidence, by his written request for the affirmative charge, and in his motion for a new trial. We quote from appellant's brief as follows:

"Appellant further contends that if the defendant arrived at the Peebles' home intending to perpetrate a fraud on her by falsely pretending to do some work, but while there discovered that she would not believe his false representation and would not fall for his attempted fraud, and if the defendant then determined to force her to give him the check and did so, then the defendant is guilty of robbery, but certainly not of false pretenses."

The evidence for the prosecution leaves much to be desired but we must remember that we are here dealing with an elderly and infirm woman upon whom was perpetrated a gigantic and outrageous fraud. The trial court admonished the jury to carefully weigh the testimony of the victim as follows:

"I will give you a specific charge and a cautionary charge as concerns the testimony of the witness Anne Peebles. You should weigh and consider her testimony in the light of the other testimony that was before the Court as you heard it, and as it reflects to past transactions in the view and in the light of her age and any senility, if you find any present. You will evaluate the things that she has testified about in the light of the circumstances surrounding them and make a logical determination of what was true and what was untrue, in your mind, as a jury, taking into consideration all of the facts, those that existed on the occasion in question on August the 13th, and any change in those conditions so far as they effect the credibility of—since that time."

Our courts have said "it is elemental that for a conviction on a charge of this kind to stand the evidence must show that the false representation alleged to have [been] made operated as an inducement for the injured party to part with his goods." (money here). Primus v. State, 21 Ala.App. 630, 111 So. 194.

In overruling and denying appellant's motion for a new trial, the lower court relied heavily on Woodbury v. State, 69 Ala. 242. The trial judge wrote:

"In the case at bar, the prosecuting witness was a woman of advanced years, and the evidence and demeanor of this witness in Court and out have demonstrated the facts of her confusion and aberation. A review of the file shows that this case started out with an affidavit charging the offense of robbery. After the time for preliminary, the Grand Jury returned a three count indictment. Each of these three counts sounded in the offense generally referred to before this Court as Larceny by Trick or Fraud. Demurrers were sustained to this indictment and to each count thereof and the case was returned to the Grand Jury. (Case No. 10,441, State vs. Whipple) A new indictment was returned consisting of four counts. Two of these counts were based on the State's theory of Larceny by Trick and two of these counts sounded in false pretense. It has been suggested that this erratic course was prompted to some extent by the vagaries of the prosecuting witness's accounts of the events in question.

"During the course of the trial of the case on this last indictment the two larceny counts were charged out by the Court at the conclusion of the evidence on motion of the defendant. The Court was concerned with the competency of the prosecuting witness, and though believing her to be basically competent, admonished the jury in the oral charge to

weigh her testimony with care, the defendant having made no issue of the witness's competency, apparently adopting this position as a matter of tactics and not of oversight.

"In the course of giving her evidence the prosecuting witness made statements of the same kind as those found in the *Woodbury* case, supra. She made certain statements indicating that fear was an important factor in her being induced to sign and deliver the $2,500.00 check to the defendant.

"Counsel for the defendant in his arguments directed toward the Court's refusal to give the defendant's requested charges numbered 31, 32, 33, 34, 45, and 46, strongly urges that the State made out 'a perfect case of robbery but not false pretense.' The Court is of the opinion that this position, as it relates to the refused charges enumerated above, was determined adversely to the defendant's contention by the following statement by Chief Justice Brickell in the *Woodbury* case, supra.

" 'The false pretense must not only be, however, a material fact, but it must have been, not the sole, exclusive, or decisive cause, but a controlling inducement with the prosecutor for the transfer of his property or money. Other considerations may mingle with the false pretense, having an influence upon the mind and conduct of the prosecutor; yet, if in the absence of the false pretense, he would not have parted with his property the offense is complete. Woodbury v. State, supra.'

"This Court gave to the jury the defendant's requested charge No. 41 which was lifted almost bodily from the language of the above quotation. This left the jury with the proper prerogative of determining what weight they would give the various portions and aspects of the prosecuting witness's testimony, including those aspects reflecting on the issue of her inducing and controlling motives when she surrendered the check to the defendant.

"It is the candid opinion of the Court, after hearing and observing the witness, that the jury could very well have concluded that due to age and infirmity, little of the prosecuting witness's testimony was absolutely free from some doubt, but that there nevertheless remained before the jury an abundance of other evidence to prove the critical issues of the offense of false pretense beyond a reasonable doubt and to a moral certainty.

"This court is not prepared to say that the jury was wrong nor that defendant was wronged."

■ We are in full accord with the findings and conclusions of the trial court. In Mrs. Peebles' frame of mind, surrounded as she was by knaves, scoundrels, and thieves, she was duped into an unwariness of one deluded leading to her unsuspecting acceptance of the false as true. She was manipulated and bamboozled, yet she testified before the jury that appellant told her he had done the repair work on her house and the amount due him was $2,500.00 and she gave him a check for that amount. Later she again called the bank, evidently for the purpose of stopping payment on the check, and she was informed the check had already been honored and cashed. If in the absence of the false pretense, she would not have parted with her money the offense is complete. We hold the evidence to be sufficient to sustain the judgment of conviction and affirm the case.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., dissents.

CATES, Presiding Judge (dissenting).

To me this was a case of robbery, or larceny by trick. The reasoning of the Supreme Court in Ex parte Thaggard, 276 Ala. 117, 159 So.2d 820, to me removes the defendant's undisputed conduct from the realm of a false pretense.